Bissell, J.,
delivered the opinion of the court.
This judgment rests on a verdict. For this reason the outlines and salient features of the case will serve to indicate the legal errors asserted and afford an ample basis for their disposition. In many of its aspects it is the most extraordinary case which has ever come under my observation. No evidence can be found in the record which discloses the origin or motive of the plaintiff’s case, and it is equally barren of testimony which serves to illustrate and explain the defendant’s theory. I am very far from a state of conviction respecting the truth of either story. The relations of the parties are left unexplained, and yet the odor which exudes from the record suggests, rather than discloses, what is the evident situation. The only excuse I have to offer for these .preliminary suggestions is to explain the difficulty which I have in stating the testimony and our conclusions concerning it, and in assigning reasons for the affirmance of the judgment.
Agnes Turner came to Denver from Montreal early in the year 1884. In April she made the acquaintance of the appellant, Filby. She was at that time married and lived with her husband in a somewhat moderate way until his death, which occurred a year or so afterwards. The acquaintance between Mrs. Turner and Filby continued from its commencement until the happening of the events which will be narrated. After her husband’s death, which occurred some year or so after she arrived, her acquaintance with Filby grew, and they remained on somewhat intimate terms until the disagreement in 1893. The radical differences between the statements of the two parties to the transaction, who were1 the principal witnesses in support of the main facts, will readily appear from a statement of the issues. The suit was brought on two promissory notes alleged to have been made in June and October, 1888, for the sum of $500 and *204 $2,000 respectively, and due two years and three years from that date, with interest, together with two causes of action, which alleged loans of $100 and $105 at different dates, which remained unpaid. This was what the plaintiff sued for.
The defendant, who is the appellant Filby, admitted that he gave a note for $500, which he had not paid, though he could not state the date of it, nor answer whether it was correctly described in the complaint. He then set up that the note was given without consideration, and as a gift from him to the plaintiff. As a defense to the second cause of action, he admitted the making and delivery of a note for the sum of $2,000, though he was unable to state whether the description in the complaint was correct; denied that it was given for value, and as a special defense averred a want of consideration therefor.
For a third defense he set up a demand by Mrs. Turner that he pay his note; alleged a refusal, and then set up a compromise whereby he paid $700 to get rid of his paper, and then averred that the plaintiff destroyed the notes. A compromise resulting from the same facts was set up in a different form. He denied the third cause of action with reference to the loan of $100 in May, 1893, but admitted the loan of $105 in July, 1893, and averred payment. The defendant then proceeds to set up a counterclaim, consisting of a great many items, and aggregating $3,443.25, which he seeks to offset, and likewise to recover a judgment for, against the plaintiff.
This statement of these two causes of action and these defenses hint at what is otherwise hidden in the record. The plaintiff went on the stand to support her complaint. She was unable to produce the notes, but undertook to describe •them, state their terms, and on this proof obtain a judgment. It is highly probable she would have been totally unable to recover on the proof which she made but for the admissions contained in the defendant’s answer and his statements on the stand. Significant as it is, and unusual as it may be, the *205 defendant admitted giving Mrs. Turner two notes of the sums which she said these notes called for and running for the time and with the interest which she stated. In the face of this admission Mrs. Turner was entitled to judgment for the amount of the notes which was her cause of action, unless they were defeated by his testimony. In stating the case, we are pursuing very much the line adopted on the trial. The plaintiff offered very little proof, although she was compelled to. offer some in order to obtain a judgment, and the defendant then undertook to establish his plea of a want of consideration. According to his testimony, from a very early date after the commencement of their acquaintance Filby furnished Mrs. Turner money. It was in various amounts and items and at different times, sometimes in considerable sums and other times in small amounts. The financial situation between the parties continued until the execution of these notes in 1889. Mrs. Turner denied that Filby gave her any money' as he stated it, and would endeavor to convey the impression that she was the financially responsible person and loaned him money. Filby denied there was any consideration for the notes and Mrs. Turner attempted to show advances. As we read the testimony, and we have taken the trouble to read the bill of exceptions, we are unable to find in Mrs. Turner’s testimony anything that convinces us that she advanced Filby $2,500. Yet we are not at liberty to reverse this case on our conclusions in this respect, because the jury found otherwise. All we are permitted to say is, that we shall accept the verdict of the jury as conclusive and assume that there was a consideration which warranted a recovery on the notes, unless the defendant succeeded in establishing his counterclaim or his defense of a settlement. Filby’s testimony respecting his various advances and payments was neither coherent, consistent nor clear. We are not greatly surprised that the jury refused to accept his statements. He certainly lacked the exact, precise, and accurate methods which characterized the records pi’oduced by the plaintiff, and he seems not to have exercised that wise forethought which is a distinguish *206 ing characteristic of a calculating, prudent person. In other words, Filby lacked books and proof, and he was entirely unable to convince the jury that he had advanced the various sums to Mrs. Turner by way of loans or advancements as he contended. The only remaining thing in the testimony with which we are at all concerned is the destruction of the paper on which the suit was brought. The notes were not produced. We must account for their nonappearance. There are two ways in which this might be done, either one of which could be adopted, and neither one of which is probably in exact accord with the facts: one is the story told by the plaintiff, and the other is the story told by the defendant. According to the defendant’s story, before one of the notes fell due, Mrs. Turner had borrowed some money from the People’s Bank and put up Filby’s 12,000 note as collateral. This was adequate banking security, because at that time Filby was reported to be worth a good many thousands of dollars, and in receipt of a rental income of four to six thousand dollars a year, and the banks were quite ready to accept his paper. This was what led to this litigation. When Mrs. Turner’s note fell due in the bank, a notice of that fact and that his note for $2,000 as security was hypothecated was sent to Filby’s house and fell into his wife’s hands. It led to a slight family jar, and the conveyance of all his real estate to his wife. On the receipt of this notice, for some reason which it is impossible for us to explain or understand, Filby consulted with the presént counsel for the plaintiff, who advised him to pay the note. He accepted the advice, went to the bank and paid $500 in cash, and gave his note for the difference, and then requested the cashier to deliver to him his own note. This the bank officer declined, because it appeared to be Mrs. Turner’s property, and she took it. Afterwards the parties met at Mrs. Turner’s house. Filby says he went there to get the notes which Mrs. Turner had agreed to surrender. She says, on the other hand, that he came there both to get the notes and to execute a new note of $1,800, which would represent the difference between *207 the amount which he paid and the sum represented by the paper. Filby’s version does not accord with the verdict. When he arrived Mrs. Turner produced the notes and delivered them to Filby. So she says. Filby states that she destroyed them and threw them in the grate. Both agree that-the notes were torn in pieces, put in the grate and burnt up by a match which Filby struck. This inclines us very much to believe that the $700'was paid under the agreement for the surrender and cancellation of the original paper. At that time the parties seem to have quarreled. Filby declined to do anything farther and left the house. He started to have a conference with the attorney, but discovered that he was employed for Mrs. Turner, and he'proceeded to obtain other counsel. Acting on their advice, he declined to pay the notes, and Mrs. Turner, as she threatened, brought suit. She obtained this judgment, and we have been unable to discover any legal reason why she should not garner the harvest.
The errors assigned on this record are of the most meager proportions. There were some objections to the introduction of testimony and some questions were asked which it would not have been error to permit the witnesses to answer, but the refusal to admit the testimony constitutes no serious error which warrants the reversal of the ease. We are not called on to state the entire case, the questions asked, or the testimony offered in order to demonstrate this fact. The rulings as to the greater part of it in any event constitute immaterial error, aud such errors we seldom feel compelled to discuss.
The appellant insists that the procedure to recover on the lost note was inaccurate and cannot be maintained. We do not agree with appellant’s theory on the law respecting commercial paper. At the common law suit could not be brought on a lost note regardless of its circumstances or conditions because, as a general proposition, the plaintiff must give indemnity in order to become entitled to judgment, and the court at the common law was powerless to enter the proper *208 decree to make the proper order to protect the defendant. The reason for the rule no longer exists. All cases, both law and equity, are tried by the same court and before the same judges, who have full power to enter any order or any decree which may be necessary for the enforcement of the rights of one-, or the protection of the interests of the other. Under these circumstances, we would certainly be inclined to disregard the common law rule if it was applicable to a case of this description. But we do not so read the law. Wherever a note is past due, so that no action can be brought by an innocent holder against the defendant, or where it is shown to have been destroyed or to have been indorsed after maturity, the modern authorities seem to recognize the right of the owner to bring suit on the lost paper without giving a bond of indemnity. Mackey v. Mackey, 16 Colo. 134; Daniel on Negotiable Instruments, vol. 2, secs. 1481 and 1482; Parsons on Notes and Bills (2d ed.), chap. 9, sec. 3.
According to the evidence of both parties in this case, the notes were burnt up. They never could rise in judgment against the maker; they were past due and the rule requiring indemnity before bringing a suit on a lost note was not applicable. There was a difference between the stories told by the plaintiff and defendant respecting the destruction. According to the defendant’s story the plaintiff destroyed them; according to the plaintiff’s story the defendant destroyed them'. If the last were true, the plaintiff might recover. If the other, there are several cases in this country which hold that she could not recover, having voluntarily destroyed the promise. In any event it would require most extraordinary proof of good faith on the part of the plaintiff to permit her to recover on a note which she had herself destroyed. The jury were correctly instructed on this subject if the question is preserved. In any event, it does not appear in the record to have been called to the attention of the court, and it is utterly unavailable for the purpose of this appeal.
On the conclusion of the testimony, the defendant asked *209 the privilege of opening and closing the case. The right was refused him and this is assigned as error. We do not believe the court erred. The plaintiff’s case was not admitted in its entirety, hence she was compelled to offer proof in order to entitle herself to a judgment for the amount which she claimed. Having left the onus on her as to any one of her causes of action, the defendant did not acquire the absolute right to open and close the case to the jury.
The only two questions of evidence which have occasioned the court any difficulty are those which relate to the proof offered by the plaintiff concerning the sale of a house at Montreal. During the progress of the trial, and in order to show a reason for the advancements of money which Filby claimed he made from time to time, he stated that the plaintiff was without means and required assistance, which, according to his testimony, was the real motive which influenced this benevolent gentleman to advance considerable sums to his friend. To counterbalance this testimony, the plaintiff undertook to prove that she came here with a good deal of money, and that quite a considerable sum of money had been received afterwards from Canada. Her stories are marvels of ingenuity, but they lack some elements which commend themselves to people familiar with business affairs. She had a financial agent here by the name of Heinrichs, who is dead, and with whom she deposited a good deal of money. In 1889, however, when she received, according to Filby’s testimony, considerable sums from him, she opened a bank account and became a business woman. We do not find it-necessary to discuss where the truth lies with reference to this matter, because the only inquiry is as to the admissibility of this particular testimony concerning her ownership of property in Montreal. She testified that she owned a house there from which she was in receipt of rents, and was otherwise a woman of means. We think this testimony entirely legitimate to overcome the proof which Filby offered concerning her pecuniary condition. In the progress of her case, the deed to the Montreal property which she executed in the *210 sale of it, was offered in evidence, and she was asked to state the sum which she received for the property. The deed was properly produced and offered, and the only thing open to objection was the proof respecting the consideration paid. There is some doubt about this, because the sale was made long after the notes were executed, and long after the various advancements testified to by Filby. Since the deed itself and the proof respecting her ownership was admissible, we are not of the opinion this proof respecting the sum received worked any injury to the defendant or was prejudicial to his case. If it be conceded she had the right to show that she owned property and the rent she was getting from it, this concession renders the proof of its sale of very little consequence. The evidence that it brought $4,500 was perhaps not the best way of proving the value, but it did not so far operate to the prejudice of the' defendant as to compel us to reverse the case.
The other evidence to which we have adverted is that which was offered to prove, that after the giving of the notes, and once to Mrs. Turner’s knowledge, Filby made a couple of wills, by which he attempted to provide for his neighbor. In one he left her $5,000, and in the other provided her with a more substantial competence of $10,000. The evidence was excluded and this rejection is complained of. We do not discover the relevancy or pertinency of this testimony under the issues. The defendant did not admit the making of the notes and aver that they were given as a protection 'for Mrs. Turner’s benefit in case of his death, nor did he plead any other defense to the paper than a simple lack of consideration. If the wills had been produced and received, this would in no manner have tended to support his plea. The fact that he had made a will or two wills in favor of Mrs. Turner, by which she was devised a veiy considerable sum, would in no manner tend to show a want of consideration for the giving of the notes. The notes were executed and delivered. They matured at very short intervals, according to the life of commercial paper, and bore inter *211 est. Paper of this sort is not set afloat without substantial reasons, and when such paper is given the person who makes it and delivers it, if he wants to defend because there is a lack of consideration for its delivery, must be prepared with proof which shall convince the jury to whom the issue is submitted.
We are unable to discover any errors which inhere in the record of sufficient consequence to compel or justify the reversal of the judgment, which will accordingly be affirmed.

Affirmed.